STATE of Wisconsin, Plaintiff-Respondent,

v.

Herbert H. TIMMERMAN, Defendant-Appellant.

Court of Appeals

*No. 94–3374–CR. Submitted on briefs October 17, 1995.—Decided November 29, 1995.*

(Also reported in 542 N.W.2d 221.)

On behalf of the defendant-appellant, the cause was submitted on the brief of *Daryl W. Laatsch* of *Daryl W. Laatsch, S.C.* of West Bend.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *James E. Doyle*, attorney general, and *Michael R. Klos*, assistant attorney general.

Before Anderson, P.J., Nettesheim and Snyder, JJ.

NETTESHEIM, J.   Herbert H. Timmerman appeals from that portion of a trial court order which denied him work-release privileges for child visitation purposes during his sixty-day confinement in the

county jail, which was imposed as a condition of probation under §§ 973.09 and 303.08, Stats. Another portion of the order granted Timmerman work-release privileges for his regular employment. We reject Timmerman's argument that the trial court misused its discretion when it failed to grant him release privileges for child visitation purposes. Therefore, we affirm the order.

## Background

Pursuant to a plea agreement, Timmerman pled no contest to two felony charges of theft by fraud. In exchange for Timmerman's no contest pleas on both charges, the State agreed to recommend a period of probation with conditions which included restitution and sixty days' confinement in the county jail with "work and child care release up to twelve hours per day, six days a week." After reviewing the plea agreement at the sentencing hearing, the trial court immediately informed Timmerman that it was "probably going to give you either one or the other, not combine work and child care. One or the other, and that's all I'll give you."

At the conclusion of the hearing, the trial court placed Timmerman on three years' probation. Among the conditions of probation, the court ordered Timmerman to serve sixty days' confinement in the county jail. The court granted Timmerman work-release privileges pursuant to §§ 973.09(1)(a), (4) and 303.08, Stats., for purposes of his regular employment.[1] However, the

---

[1] The trial court placed Timmerman on probation pursuant to § 973.09(1) and (4), Stats. Section 973.09(4) permits a trial court to confine a defendant to the county jail for a period not to exceed one year and grant release privileges pursuant to § 303.08, Stats. A defendant confined to county jail as a condi-

court denied Timmerman's additional request that he be granted further release privileges for purposes of his court-approved child visitation, scheduled for alternate Saturdays and Sundays, and a few hours on Mondays or Wednesdays. The court denied this request, concluding that such visitation did not come under the scope of permissible release pursuant to § 303.08(1)(c). Timmerman appeals.

## DISCUSSION

Probation is not a sentence, but is an alternative to sentencing. *State v. Gereaux,* 114 Wis. 2d 110, 113, 338 N.W.2d 118, 119 (Ct. App. 1983). Probation is a matter of privilege, not right. *State v. Heyn,* 155 Wis. 2d 621, 627, 456 N.W.2d 157, 160 (1990). Section 973.09(1)(a), STATS., gives the trial court broad discretion to place a convicted person on probation and to "impose any conditions which appear to be reasonable and appropriate." *Heyn,* 155 Wis. 2d at 627, 456 N.W.2d at 160. The trial court may order confinement as a condition of probation, but nonetheless grant a person the privilege of being released for the purposes enumerated in § 303.08(1), STATS. Section 973.09(4).

Section 303.08, STATS., limits the purposes for which a trial court may grant release. The statute provides, in part:

> **(1)** Any person sentenced to county jail for crime, nonpayment of a fine or forfeiture, or contempt of

tion of probation and granted release privileges pursuant to § 973.09 does not serve a sentence and should not be confused with those who receive Huber law privileges under § 303.08 and serve a sentence. *See Yingling v. State,* 73 Wis. 2d 438, 440, 243 N.W.2d 420, 421 (1976).

court, may be granted the privilege of leaving the jail during necessary and reasonable hours for *any of the following purposes*:

(a) Seeking employment or engaging in employment training;

(b) Working at employment;

. . . .

(c) Conducting any self-employed occupation *including housekeeping and attending the needs of the person's family*;

(d) Attendance at an educational institution; *or*

(e) Medical treatment.

*Id.* (emphasis added).

On appeal, Timmerman contends that the trial court misused its discretion by "automatically denying" his initial request for release for both employment and child care as described in the plea agreement. Timmerman maintains that the trial court erred when it told him that he would probably get only "one or the other." Timmerman further challenges the court's later conclusion that visitation does not come under the scope of § 303.08(1)(c), STATS.

The State agrees with Timmerman's contention that § 303.08, STATS., does not preclude the trial court from allowing release for both regular employment *and* child care purposes. The State acknowledges that "[i]t also appears, at least at some points in the record, that the trial court would not even consider release privileges for both employment and child care."[2] However, the State asserts that the trial court ultimately came to the correct conclusion that release for purposes of child visitation is not envisioned under subsec. (1)(c).

---

[2] While this statement comes close to confessing error, the State never expressly makes such a concession.

We agree with the State that it is not entirely clear from the trial court's statements that the court determined, as a matter of law, that § 303.08(1), STATS., precludes release for the multiple purposes stated therein. Regardless, the threshold issue before us is the interpretation of § 303.08. Statutory construction presents a question of law which we review independently. *State v. Williams,* 190 Wis. 2d 1, 6, 527 N.W.2d 338, 340 (Ct. App. 1994). However, despite our de novo standard of review, we value a trial court's ruling on such a question. *Scheunemann v. City of West Bend,* 179 Wis. 2d 469, 475, 507 N.W.2d 163, 165 (Ct. App. 1993).

When construing a statute, our purpose is to determine and give effect to the intent of the legislature. *Williams,* 190 Wis. 2d at 6, 527 N.W.2d at 340. We give the language of an unambiguous statute its ordinary meaning. *Id.* Applying this test, we conclude that paras. (a)-(e) of § 303.08(1), STATS., are not mutually exclusive.

The introduction to § 303.08(1), STATS., unambiguously states that any person sentenced to county jail "may be granted the privilege of leaving the jail . . . for *any of the following purposes* . . . ." (Emphasis added.) This language does not limit the trial court's authority to grant release for only "one" of the purposes stated in the statute. Rather, the statute uses the broader word "any." *See id.* We must construe all statutory words that are not technical according to common and approved usage. Section 990.01(1), STATS. The word "any" is defined as "[s]ome; one out of many; an indefinite number" and is "often synonymous with 'either,'

'every,' or 'all.' " BLACK'S LAW DICTIONARY 94 (6th ed. 1990). It is thus clear that the legislature intended to give the trial court discretion to grant release either for one or several of the purposes under § 303.08(1) depending upon the specific circumstances of the case. *Cf. State v. Lloyd,* 104 Wis. 2d 49, 63, 310 N.W.2d 617, 625 (Ct. App. 1981). This interpretation is also consistent with the broad discretion given to the trial court in granting probation and its attendant conditions. *See Heyn,* 155 Wis. 2d at 627, 456 N.W.2d at 160.

We therefore agree with the State and Timmerman that § 303.08(1), STATS., allows a trial court to permit release for more than one of the conditions recited in paras. (a)-(e).

■

Having established that the trial court, in its discretion, could have authorized Timmerman's release for both work and child care, we nonetheless conclude that the court did not misuse this discretion when it denied Timmerman's request for release for the purpose of child visitation pursuant to § 303.08(1)(c), STATS. This subsection permits release for the purpose of "[c]onducting any self-employed occupation including housekeeping and attending the needs of the person's family."

Timmerman first argues that the trial court's initial statement at the sentencing hearing that the court would "probably" not grant release for both employment and child care "bespeaks a made-up mind." *See State v. J.E.B.,* 161 Wis. 2d 655, 674, 469 N.W.2d 192, 200 (Ct. App. 1991), *cert. denied,* 503 U.S. 940 (1992). As such, Timmerman contends that the court automatically denied his child care release request.

The premise of this argument is that we are confined to this singular statement made by the trial court at the outset of the sentencing proceeding. We reject this approach because, as our later discussion will reveal, the trial court's ultimate ruling on the issue was more elaborate and was based on additional information presented at the sentencing hearing. We properly look to the entire record and the totality of the court's remarks when reviewing this discretionary determination. *See id.*

We now move to this larger question. At the sentencing hearing, Timmerman argued that he was trying to improve his relationship with his three-and-one-half-year-old daughter and was taking a more active role in her life. While the plea agreement initially characterized Timmerman's projected release as "child care" premised, the trial court learned at the sentencing hearing that Timmerman did not have custody or primary placement of his daughter. Instead, Timmerman had recently been granted visitation rights on alternate weekends and one day during the week for seven or eight hours.

Based on this information, the trial court concluded that Timmerman's visitation privileges did not "com[e] within the scope of child care as permitted under [§ 303.08(1)(c), STATS.]." While we are not prepared to say that visitation can *never* be a permissible reason for release under § 303.08(1)(c), we conclude that, *under the facts of this case*, Timmerman has not demonstrated that his visitation qualified as a form of "self-employed occupation" relating to "housekeeping and attending the needs of the person's family" within the meaning of § 303.08(1)(c).

Timmerman reasons that visitation is a valid purpose for release because a person exercising his or her visitation rights is "attending the needs of the person's family" under § 303.08(1)(c), STATS. He maintains that by visiting his daughter, he is attending to his family's needs.

We disagree. As we have noted, the release envisioned by the statute must be for the purpose of "[c]onducting any self-employed occupation including housekeeping and attending the needs of the person's family." *See id.* Timmerman's argument focuses on the "housekeeping and attending the needs of the person's family" language of the statute, but it ignores the threshold requirement of the statute that the release be for purposes of "any self-employed occupation." *See id.*

The obvious legislative purpose of subsec. (1)(c) is to allow release for purposes of self-employment. However, by this enactment, the legislature has also recognized that housekeeping and related services provided by a parent to the family unit are on par with the effort expended in the more conventional "work for pay or profit" setting involving self-employment or employment by a third party. Thus, the subsection goes on to clarify that, in some instances, self-employment can include the responsibilities associated with housekeeping and attending to the needs of the family. *See id.* The use of the term "including" simply connotes an illustrative example of a general principle. *State v. Caldwell,* 154 Wis. 2d 683, 688, 454 N.W.2d 13, 16 (Ct. App. 1990).

■■■■

We thus interpret the statute to mean that, in appropriate circumstances, housekeeping and attending to the needs of a person's family can rise to the level

of a "self-employed occupation" within the meaning of § 303.08(1)(c), STATS. In such a case, the trial court may, in its discretion, properly grant release for the performance of such duties. In addition to any other criteria which the trial court may deem relevant, that determination depends on the nature and quality of the effort, service, care or work performed by the person and the amount of time expended in such effort. Whether these conditions for release are satisfied can only be made on a case-by-case basis.

Applying these criteria to the facts of this case, it is clear that Timmerman provided the trial court with no helpful information on these considerations. As such, Timmerman left the court with nothing more than his conclusionary statement that visitation *per se* qualified him for release. As we have demonstrated, that assertion, standing alone, was insufficient.

Despite our rejection of Timmerman's argument, we also reject the State's sweeping contention that "[a] weekly visitation to a child by a noncustodial parent does not involve [the] substantial commitment" of time, work and responsibility. As we have held, in some circumstances the nature of a parent's efforts, duties and contributions to the needs of the family for housekeeping or other family-related purposes during visitation could qualify as a form of "self-employed occupation" pursuant to the statute. We also stress that this determination should not be governed by the label of the parent's right (for example, "child care," "custody," "placement" or "visitation"), but rather by a substantive analysis of the person's activities and contributions to the family's needs while exercising such right.

An examination of the legislative history of subsec. (1)(c) of § 303.08, STATS., lends support to our interpre-

tation.[3] When originally enacted as § 56.08, Stats., 1959, the statute provided:

> Any person sentenced to county jail . . . may be granted the privilege of leaving the jail during necessary and reasonable hours for any of the following purposes . . .:
>
> . . . .
> (b) Working at *his* employment;
> (c) Conducting *his* own business or other self-employed occupation including, *in the case of a woman*, housekeeping and attending the needs of *her* family . . . .

*See* 1959 S.B. 488, Laws of 1959, ch. 504, § 3 (emphasis added).[4] Thus, from the very inception, the statutes governing release from probation-ordered confinement have clearly envisioned "housekeeping and attending the needs of the family" as a form of a "self-employed occupation."

■■■

We hold that pursuant to § 303.08(1), Stats., the trial court may, in the proper exercise of discretion, permit release from probation confinement for any of the purposes recited in the statute, including visitation. However, if release during visitation periods is sought, the probationer must establish that he or she performs or provides services qualifying as "housekeeping and attending the needs of the person's family" during such visitation periods.

---

[3] The legislative history of a statute may be used as further support for a conclusion that the statute is unambiguous. *See Novak v. Madison Motel Assocs.*, 188 Wis. 2d 407, 416, 525 N.W.2d 123, 126 (Ct. App. 1994).

[4] The statute was later amended to its current form to make it gender neutral. *See* 1975 A.B. 431, Laws of 1975, ch. 94, § 25.

In this case, Timmerman failed on a threshold basis to provide the trial court with any information on this question. Thus, the court did not misuse its discretion when it denied Timmerman's request. And, even if Timmerman had provided such information, it was still within the court's discretion whether to allow such release.

*By the Court.*—Order affirmed.